UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

**In re:**  CASE NO.: 6:24-bk-00391-TPG
 CHAPTER 11
**DUSOBOX CORPORATION,**

    **Debtor.**
_____/

**DEBTOR'S MOTION TO DESIGNATE SUSTAINABLE
CORRUGATED, LLC AS A CRITICAL VENDOR AND TO
MAKE WEEKLY PAYMENTS ON PREPETITION CLAIMS OF CRITICAL VENDOR**

The Debtor, Dusobox Corporation ("Debtor"), moves the Court for entry of an order under 11 U.S.C. §§ 105(a), 363(b), Rules 1107, 1108 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 2081-1(g), designating the Debtor's creditor Sustainable Corrugated, LLC ( "SC") as a critical vendor and authorizing the Debtor to make weekly payments on prepetition claims of SC and authorizing financial institutions to honor and process checks and transfers related to such obligations (the "Motion"). In further support of this Motion, the Debtor states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and legal predicates for relief requested herein are sections 105(a), 363(b), 1107(a) and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the

"Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") and Local Rule 2081-1(g),

## BACKGROUND

4.     The Debtor is a leading designer, engineer, and manufacturer of custom corrugated display solutions and product packaging. The Debtor provides expertly engineered and custom designed and printed corrugated displays and packaging using the most technologically advanced printing and converting equipment.

5.     As a privately held family business since 1951, the Debtor continues to operate under the leadership of the Kelley family. Originally from Boston, the Debtor is now headquartered in Orlando, Florida, and remains one of the most innovative manufacturers of custom corrugated packaging and display solutions in the world.

6.     Over the past few years, this industry has faced significant economic challenges and some of the Debtor's major customers have greatly decreased their yearly orders. This is in contrast to the increase in orders that came, and then abruptly diminished, with Covid.

7.     One major issue is that the Debtor was expecting an additional $12,500,000 in revenue in 2023 alone from a single customer. Based on those expectations, Debtor financed new equipment, leased another 40,000 sq. ft. of warehouse space, and hired additional employees, including high-level management additions. In an unexpected blow to the Debtor, that customer ended up generating less than $2,500,000 in revenue in 2023, less than 20% of expectations.

8.     These factors have put a strain on the Debtor's financial resources. Filing chapter 11 will allow the Debtor to restructure debt and reorganize its operations and finances. The Debtor will trim down, sublease out warehouse space, and reject or surrender unnecessary contracts. The

Debtor has had and continues to have a solid, profitable business. The Debtor expects to reorganize, restructure, and continue its 70-year plus tradition of excellence.

9. On January 29, 2024, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date"), in this Court.

10. The Debtor remains in possession of its property and continues to operate and manage its property as debtor and debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code and the order of this Court.

11. No trustee or examiner has been appointed in this Chapter 11 case and no committee has yet been appointed.

## RELIEF REQUESTED

12. The Debtor has reviewed its various vendor and supplier relationships to identify those who were truly critical ("Critical Vendors"). This process included looking at factors such as: (i) how often the Debtor utilized a particular vendor's services or goods; (ii) the nature of the services or goods provided by the vendor; (iii) whether the services or goods are necessary for the production of finished goods; (iv) whether the goods or services are necessary from a regulatory/compliance/standards perspective; and/or (v) whether the particular vendor would be difficult to replace.

13. The Debtor further determined which of those vendors and suppliers were subject to an enforceable contract, such that they would be able to compel performance during this case, and removed such vendors and suppliers from the list of potential Critical Vendors.

14. Additionally, the Debtor further determined whether such vendors and suppliers were either sole source suppliers, or would be so difficult, expensive or disruptive to replace, that

the benefits of paying such vendors and suppliers their prepetition claims would, in the Debtor's business judgment, greatly outweigh the harm that would result from having to find alternative vendors or suppliers.

15. Utilizing the above analysis, the Debtor has identified SC as a Critical Vendor and believes, in its business judgment, that it will face irreparable harm if SC refuses to perform services or provide goods to the Debtor during the pendency of this case.

16. Avoiding disruption to the Debtor's business operations will ultimately assist in facilitating a successful transition into the Chapter 11 proceedings and will bolster the Debtor's efforts to maximize value during this case, all of which will inure to the benefit of the Debtor's creditors and other important stakeholders.

17. The Debtor's pre-petition debt to SC is roughly $2,150,000.

18. By way of this Motion, the Debtor seeks entry of an order granting it authority to make payments toward SC's prepetition claims (the "Critical Vendor Payments"), for goods supplied by SC and with whom the Debtor continues to do business. In exchange, the Debtor requests authority to pay SC the prepetition sums owed to it on such reasonable terms described herein.

**BASIS FOR RELIEF**

19. Section 363(b) confers bankruptcy courts the power to authorize a debtor to pay pre-petition claims to critical vendors. *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). A critical vendor claim may be paid if: (a) the payments are necessary to the reorganization process; (b) a sound business justification exists in that the critical vendors refuse

to continue to do business with the debtor absent being afforded critical vendor status; and (c) the disfavored creditors are at least as well off as they would have been had the critical vendor order not been entered. *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 17 (Bankr. M.D. Fla. 2005).

20. Further, section 1107(a) and 1108 authorize a debtor-in-possession to continue to operate its business, and in doing so, to protect and preserve the value of its business, including through the payment of prepetition claims if necessary to perform the debtor's duty. *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim."). The *CoServ* court provided a three-prong test for determining whether a pre-plan payment of a pre-plan payment of a prepetition claim was a valid exercise of a debtor's fiduciary duty: (a) it must be critical that the debtor deal with the claimant; (b) unless the vendor deals with the claimant, the debtor risks the probability of harm, or alternatively, loss of economic advantage to the estate or the debtor's going concern value which is disproportionate to the amount of the claimant's prepetition claim; (c) there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim. *Id.* at 498.

21. A Bankruptcy courts' powers under §§ 363, 1107 and 1108 are further supplemented by section 105. Under section 105, Bankruptcy courts may authorize the payment of prepetition claims where such payments are necessary to preserve the going-concern value of a debtor's business, thereby facilitating reorganization, otherwise known as the "doctrine of necessity." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989)(citing the Supreme Court decision *Miltenberger v. Logansport R. Co.*, 106 U.S. 286, 1 S. Ct. 140 (1882) and stating that "[t]he ability of a Bankruptcy Court to authorize the payment of pre-petition debt when

such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."); *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981); *In re Just For Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999) ( "The Supreme Court, the Third Circuit and the District of Delaware all recognize a bankruptcy court's power to authorize payment of prepetition claims when such payment is necessary for the survival during Chapter 11"). The necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-organization claims have been paid." *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972); *See also See In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (recognizing that "[i]f payment of a pre-petition claim is essential to the continued operation of [the debtor], payment may be authorized").

22. SC provides the Debtor with goods that are difficult if not impossible to obtain from another vendor. However, even if the goods could be obtained elsewhere, the time of transition to a new vendor would gravely threaten the Debtor's business through untimely delivery of products to market and the resulting loss of customers—ultimately threatening the Debtor's reorganization. The Debtor believes that unless SC is designated as a critical vendor, (1) the Debtor will fail itself as a business or (2) SC will refuse to continue providing indispensable goods to the Debtor. However, upon the terms set forth below, SC can continue to provide indispensable goods to the Debtor, resulting in continued revenue for the bankruptcy estate, and ultimately placing other creditors in this case in at least as good of a position as they would be if SC was not designated a critical vendor.

**A. Payment of the Critical Vendor Claim is Essential to the Debtor's Continued Operations During the Chapter 11 Case.**

23. The Debtor relies on numerous vendors to provide the components and raw materials needed to make its distinctive products. A number of these vendors have developed a deep understanding of the Debtor's requirements and standards of quality allowing them to provide the Debtor tailored materials quickly and efficiently.

24. Given the Debtor's singular manufacturing needs, the Debtor's relationships with its vendors are of utmost importance to its operational framework. Changes to new vendors can cause disruptions, increased costs, and quality compromises that threaten the Debtor's ability to fulfill its obligations to purchasers.

25. The primary raw material used in the Debtor's manufacturing process is corrugated sheet or "broad", which consists of a fluted corrugated sheet fixed between two flat linerboards. The quality of corrugated sheet can vary widely based on several factors including the type of paper used, the flute size, the number of walls, and adherence to industry standards. The Technical Association of the Pulp and Paper Industry ("TAPPI") publishes standards for the pulp, paper, packaging and converting industries and TAPPI conforming corrugated sheet is generally considered high quality because it adheres to specific standards related to the material's strength, durability, and performance.

26. Many of the Debtor's purchasers require or expect the use of TAPPI conforming corrugated sheets in the manufacturing process because, for example, such sheets provide better protection for products during transport and storage, and because of the TAPPI's standards for sustainability.

27. SC provides the Debtor with such high-quality corrugated sheets. SC's sheets are made from 100% recycled paper product and conform to the Technical Association of the Pulp and Paper Industry ("TAPPI") guidelines. Using the sheets SC provides, the Debtor transforms the corrugated material into finished boxes meeting specific customer requirements, including size, strength, and design.

28. Furthermore, many of the Debtor's product designs require the use of bespoke sheets, not readily available from other sources. Based on the Debtor's instructions, including size and structural specifications, SC provides these custom sheets, made to order. Without these materials, the Debtor would have no ability to produce its products.

29. As a condition of continuing to do business with the Debtor, SC has requested that the Debtor commence making small, but regular payments on SC's pre-petition claim.

30. If SC ceases its business with the Debtor, the Debtor's supply of indispensable high-quality materials would be severely threatened. In turn, because the Debtor's clients expect the Debtor to provide high-quality products, which quality is dependent on the materials used, the loss of SC as a vendor would lead to the loss of customers. More importantly, even if the Debtor were able to find a new corrugated sheet vendor, the time it would take to transition to a new vendor would effectively end the Debtor's business, as the Debtor would be unable to fulfill orders on time. As such, SC is the only practical source from which it can procure necessary corrugated sheet within a timeframe and at a price that will allow the Debtor to operate its business as a going concern and successfully reorganize.

31. Alternatively, if SC is conferred critical vendor status, this allow the Debtor to continue generating revenue through the manufacture and sale of its products, and the other

creditors in this case will be at least as well off as they would have been had SC not been treated as a critical vendor.

32. On this basis, the *Tropical Sportswear* factors test is met here as (a) Critical Vendor Payments are necessary as the goods provided by SC are critical to the Debtor's business and successful reorganization, (b) SC has requested the Critical Vendor Payments as a condition of continuing its business with the Debtor, and (c) the other creditors in this case will be at least as well off as they would have been had the Critical Vendor Payments not been made. Furthermore, by making the Critical Vendor Payments, the Debtor will adhere to the mandates of sections 1107(a) and 1108 of the Bankruptcy Code, acting within its fiduciary duties to maintain business continuity, safeguard the value of the Bankruptcy Estate, and facilitate a successful reorganization by continuing its manufacturing and revenue generation.

**B. Proposed Terms and Conditions of Payment of the Critical Vendor Claim.**

33. In recognition of SC's critical role in the Debtor's business operations, the Debtor proposes the following terms for designating SC as a critical vendor:

   a. <u>Continuation of Supply and Customary Trade Terms:</u> SC shall continue supplying goods to the Debtor on a cash in advance basis . Any changes to the current prices for goods as of 2/15/2024 purchased by Debtor from SC shall be governed by applicable industry pricing guidelines, which in this case, requires reference to the RISI Index at cost, plus at least a factor of 1.5% per every $10/ton price movement, to be implemented thirty (30) days after the RISI publication of change. The Parties reserve the right to negotiate different, but mutually agreeable, trade terms.

    b. <u>Payment of Pre-petition Debt:</u> In addition to amounts paid by Debtor to SC for goods on a cash-in-advance basis, the Debtor will pay SC's pre-petition debt at a rate of $3,500 per week, and which payments shall be made up to the date of the confirmation hearing in this case.

    c. <u>Waiver of Preferential Transfer Action Rights:</u> In consideration for SC's continued provision of goods post-petition, the Debtor shall waive any right to bring an action against SC for the avoidance and recovery of any preferential transfers pursuant to 11 U.S.C. §§ 547 and 550.

## CONCLUSION

SC's goods are indispensable components of the Debtor's supply-chain. However, if the Debtor is not permitted to make payments on SC's prepetition claim, the Debtor will lose SC as a vendor, the Debtor's manufacturing operations will cease, and its business will fail. Permitting said payment directly aligns with the Bankruptcy Code's intent under sections 105, 363, 1107 and 1108, enabling the Debtor to maintain essential supplies and preserve its business value, which ultimately serves the best interests of all parties involved in the reorganization process.

WHEREFORE, the Debtor respectfully requests that this Court:

1. Designate Sustainable Corrugated, LLC as a critical vendor pursuant to sections 105(a), 363(b), 1107, and 1108 of the Bankruptcy Code and Local Rule 2081-1(g);

2. Authorize the Debtor to make payments on prepetition claims owed to Sustainable Corrugated, LLC as outlined in the Motion and Exhibit "A" attached thereto, on the terms and conditions proposed or as otherwise ordered by the Court;

3. Authorize and direct all financial institutions to honor and process checks and electronic transfers made by the Debtor as payment on the prepetition claims to Sustainable Corrugated, LLC;

4. Grant such other and further relief as the Court deems just and proper.

Dated: March 1, 2024                                Respectfully submitted,

*/s/ Jonathan M. Sykes*
Michael A. Nardella, Esq.
Florida Bar No. 051265
Jonathan M. Sykes, Esq.
Florida Bar No. 073176
**Nardella & Nardella, PLLC**
135 W. Central Blvd., Suite 300
Orlando, FL 32801
Phone: (407) 966-2680
mnardella@nardellalaw.com
jsykes@nardellalaw.com
klynch@nardellalaw.com

*PROPOSED COUNSEL TO DEBTOR*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2024, a true and correct copy of the *Debtor's Motion to Designate Sustainable Corrugated, LLC as a Critical Vendor and to Make Payments on Prepetition Claims of Critical Vendor* has been (i) all filing users through the CM/ECF system; (ii) via first class U.S. mail, postage prepaid to United States Trustee for Region 21, c/o Bryan Edgar Buenaventura at the Office of the United States Trustee, George C. Young Federal Building, 400 W. Washington St., Suite 1100, Orlando, FL 32801, Official Committee of Unsecured Creditors, c/o J. Ellsworth Summers, Jr, Esq., Burr & Forman, LLP, 200 South Orange Ave., Suite 800, Orlando, FL 32801 Counsel for Sustainable Corrugated, LLC, Alan R. Rosenberg, Esq., 101 N.E. Third Avenue, Suite 1210, Ft. Lauderdale, FL 33301, Sustainable Corrugated, LLC, 2852 Five Springs Road, Dalton, GA 30720 and all creditors shown on the Local Rule 1007-2 Parties-in-Interest as listed on the mailing matrix attached.

>  */s/ Jonathan M. Sykes*
>  Jonathan M. Sykes, Esq.

| | | |
|---|---|---|
| Label Matrix for local noticing<br>113A-6<br>Case 6:24-bk-00391-TPG<br>Middle District of Florida<br>Orlando<br>Fri Mar  1 12:53:03 EST 2024 | Dusobox Corporation<br>2501 Investors Row, Suite 500<br>Orlando, FL 32837-8389 | 101 NE Third Avenue, Suite 1210<br>Ft. Lauderdale, FL 33301-1147 |
| AMERITEK INC.<br>118 SOUTH WALNUT CIRCLE<br>Greensboro, NC 27409-2625 | American Express<br>P.O. Box 650448<br>Dallas, TX 75265-0448 | BEST DEDICATED SOLUTIONS<br>702 N. DEERPATH DRIVE<br>Vernon Hills, IL 60061-1802 |
| Colfin 2017-2 Industrial<br>Owner, LLC<br>345 Park Avenue<br>New York, NY 10154-0004 | Dusobox Corporation<br>c/o Keenan D. Smith<br>135 W. Central Blvd., Ste. 300<br>Orlando, FL 32801-2435 | EXPRESS SERVICES, INC -<br>PO BOX 535434<br>Atlanta, GA 30353-6220 |
| FLOCK FREIGHT, INC<br>DEPT. LA 24808<br>Pasadena, CA 91185-0001 | HOOD CONTAINER<br>TAMPA PLANT)<br>301 COMMERCE BLVD<br>BUILDING #1<br>Oldsmar, FL 34677-2806 | HOOD CONTAINER (ATLANTA)<br>ATLANTA)<br>5090 McDOUGALL DRIVE SW<br>Atlanta, GA 30336-2133 |
| IMPACT IMAGING GROUP<br>1015 W. BOBO NEWSOM HWY<br>Hartsville, SC 29550-4756 | J.M. Fry Co<br>P.O. Box 7719<br>Henrico, VA 23231-0219 | KIWIPLAN, LLC<br>7870 E. KEMPER ROAD<br>SUITE 200 SOUTH<br>Cincinnati, OH 45249-1365 |
| LEWISBURG<br>170 WOODSIDE AVE<br>Lewisburg, TN 37091-2866 | MARK TRECE<br>5385 GATEWAY BLVD BAYS 1-5<br>Lakeland, FL 33811-1785 | Meredith Webb<br>334 North Main Street<br>Burlington, NC 27217-3906 |
| Orange county Tax Collector -<br>Scott Randolph<br>P.O. Box 545100<br>Orlando, FL 32854-5100 | Penske<br>1301 Taft Vineland Rd<br>Orlando, FL 32837-8408 | SCHWARZ PARTNERS<br>PACKAGING LLC<br>1101 EAST 33RD STREET<br>Hialeah, FL 33013-3528 |
| SUSTAINABLE CORRUGATED, LLC<br>2852 FIVE SPRINGS ROAD<br>Dalton, GA 30720-7525 | Small business Admin<br>409 3rd St., SW<br>Washington, DC 20416-0002 | THE JM FRY COMPANY<br>4329 EUBANK ROAD<br>Henrico, VA 23231-4314 |
| TOROSIAN TECH SERVICES, INC<br>P.O. BOX 8243<br>Portsmouth, NH 03802-8243 | The J.M. Fry Company<br>c/o Dana L. Robbins, Esq.<br>201 N. Franklin Street, Suite 3200<br>Tampa, FL 33602-5872 | The J.M. Fry Company<br>c/o J. Ellsworth Summers, Jr., Esq.<br>Burr & Forman LLP<br>50 N. Laura Street, Suite 3000<br>Jacksonville, FL 32202-3658 |
| The J.M. Fry Company<br>c/o William B. McDaniel, Esq.<br>Lansing Roy, P.A.<br>1710 Shadowood Lane, Suite 210<br>Jacksonville, FL 32207-2184 | Toyota Industries Commerical Finance, Inc.<br>c/o Weltman, Weinberg & Reis Co., LPA<br>965 Keynote Circle<br>Cleveland, OH 44131-1829 | Visipak<br>123 Manufacturers Dr<br>Arnold, MO 63010-4727 |

```
Winter Park National Bank
c/o R. Scott Shuker, Esq.
SHUKER & DORRIS, P.A.
121 South Orange Avenue, Suite 1120
Orlando, Florida 32801-3238
```

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
(u)Note: Entries with a '+' at the end of the      End of Label Matrix
name have an email address on file in CMECF        Mailable recipients    30
-------------------------------------------        Bypassed recipients     1
Note: Entries with a '-' at the end of the         Total                  31
name have filed a claim in this case
```